01

02

03

04

05

06          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
07                 AT SEATTLE

08  MICHELE D. LYDE,                    )   CASE NO. C11-1526-JLR-MAT
                                        )
09          Plaintiff,                  )
                                        )
10      v.                              )   REPORT AND RECOMMENDATION
                                        )   RE: SOCIAL SECURITY DISABILITY
11  MICHAEL J. ASTRUE, Commissioner     )   APPEAL
    of Social Security,                 )
12                                      )
            Defendant.                  )
13  _____)

14          Plaintiff Michele D. Lyde proceeds through counsel in her appeal of a final decision of

15  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16  denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental

17  Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ).   The Court

18  finds this case appropriate for decision without oral argument.   Having considered the ALJ's

19  decision, the administrative record (AR), and all memoranda of record, the Court recommends

20  that this matter be AFFIRMED.

21  / / /

22  / / /


REPORT AND RECOMMENDATION
PAGE -1

01                          **FACTS AND PROCEDURAL HISTORY**

02          Plaintiff was born on XXXX, 1961.[1]   She has a GED and previously worked as a fish

03   packer.   (AR 32, 36.)

04          Plaintiff filed an application for DIB and protectively for SSI benefits on May 17, 2007,

05   alleging disability beginning January 31, 2006.   She is insured for DIB through June 30, 2011.

06   (AR 13.)   Plaintiff's applications were denied at the initial level and on reconsideration.

07   Plaintiff timely requested a hearing.

08          On April 7, 2010, ALJ John Bauer held a hearing, taking testimony from plaintiff and a

09   vocational expert.   (AR 29-44.)   At hearing, plaintiff amended her alleged onset date to April

10   1, 2006. (AR 13, 37.) On April 29, 2010, the ALJ issued a decision finding plaintiff not

11   disabled.   (AR 13-24.)

12          Plaintiff timely appealed.   The Appeals Council denied plaintiff's request for review

13   on July 7, 2011 (AR 1-5), making the ALJ's decision the final decision of the Commissioner.

14   Plaintiff appealed this final decision of the Commissioner to this Court.

15                                    **JURISDICTION**

16          The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

17                                     **DISCUSSION**

18          The Commissioner follows a five-step sequential evaluation process for determining

19   whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

20   must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

21   ────────────────────

22          1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
     Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
     Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

01  not engaged in substantial gainful activity since the amended alleged onset date.   At step two,

02  it must be determined whether a claimant suffers from a severe impairment.   The ALJ found

03  plaintiff's depression, not otherwise specified, anxiety, not otherwise specified, and substance

04  abuse severe.   Step three asks whether a claimant's impairments meet or equal a listed

05  impairment.   The ALJ found plaintiff's impairments did not meet or equal the criteria of a

06  listed impairment.

07      If a claimant's impairments do not meet or equal a listing, the Commissioner must

08  assess residual functional capacity (RFC) and determine at step four whether the claimant has

09  demonstrated an inability to perform past relevant work.   The ALJ found plaintiff able to

10  perform a full range of work at all exertional levels but with the following nonexertional

11  limitations:   plaintiff can perform simple, routine tasks that require no more than occasional

12  contact with the general public.   With that assessment, the ALJ found plaintiff able to perform

13  her past relevant work as a fish packer, as actually and generally performed.

14      If a claimant demonstrates an inability to perform past relevant work, the burden shifts

15  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

16  an adjustment to work that exists in significant levels in the national economy.   Finding

17  plaintiff not disabled at step four, the ALJ did not proceed to step five.

18      This Court's review of the ALJ's decision is limited to whether the decision is in

19  accordance with the law and the findings supported by substantial evidence in the record as a

20  whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

21  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

22  reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

REPORT AND RECOMMENDATION
PAGE -3

01 F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

02 supports the ALJ's decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

03 F.3d 947, 954 (9th Cir. 2002).

04      Plaintiff argues the ALJ erroneously evaluated the medical opinion testimony, erred in

05 the consideration of post-traumatic stress disorder (PTSD) and substance abuse, and erred in

06 finding her capable of performing her past relevant work.   She requests remand for further

07 administrative proceedings.   The Commissioner argues that the ALJ's decision is supported by

08 substantial evidence and should be affirmed.

09 <u>Step Two</u>

10      At step two, a claimant must make a threshold showing that her medically determinable

11 impairments significantly limit her ability to perform basic work activities.   *See Bowen v.*

12 *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

13 activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§

14 404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not

15 severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

16 effect on an individual's ability to work.'" *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th

17 Cir. 1996 (quoting Social Security Ruling 85-28).   "[T]he step two inquiry is a de minimis

18 screening device to dispose of groundless claims."   *Id.* at 1290 (citing *Bowen*, 482 U.S. at

19 153-54).   An ALJ is also required to consider the "combined effect" of an individual's

20 impairments in considering severity.   *Id.*

21      A diagnosis alone is not sufficient to establish a severe impairment.   Instead, a claimant

22 must show that his medically determinable impairments are severe.   20 C.F.R. §§ 404.1520(c),

REPORT AND RECOMMENDATION
PAGE -4

01   416.920(c).

02   A.      <u>PTSD</u>

03          Plaintiff argues the ALJ erred in failing to find PTSD a severe impairment at step two,

04   asserting the ALJ failed to consider "substantial and undisputed evidence" which supported this

05   finding. (Dkt. 20 at 17.)   The Commissioner argues the ALJ appropriately found the record

06   lacked sufficient objective evidence to support a clear diagnosis of PTSD.   At the most, the

07   Commissioner argues, plaintiff is simply asking for a more favorable reading of the evidence,

08   an insufficient basis for overturning the rational interpretation of the ALJ.   The Court agrees

09   with the Commissioner.

10          At step two, the ALJ found the diagnosis of PTSD unsupported by the record. (AR 16.)

11   The ALJ acknowledged that consultative examiner Dr. Widlan noted the diagnosis as appearing

12   in previous records, but found plaintiff did not meet the criteria for this diagnosis.   The ALJ

13   cited Dr. Widlan's observation that the previous records provided minimal information to

14   support the diagnosis. (AR 272.) While plaintiff's nurse practitioner at Sound Mental Health

15   listed PTSD as a "rule out" diagnosis (AR 16, 329, 346), this provider is not an "acceptable

16   medical source" qualified to establish a medically determinable impairment. 20 C.F.R. §§

17   404.1513(a), 416.913(1), SSR 06-03p.   While information from "other sources" such as a

18   nurse practitioner may be considered (*id.*), such evidence is insufficient by itself to make this

19   showing.

20          Although plaintiff posits the sufficiency of the report of state agency reviewing doctor

21   Mary Gentile, Ph.D., as support for a PTSD diagnosis, the ALJ correctly noted the lack of

22   collateral sources of information for a PTSD diagnosis in the various state agency evaluations.

REPORT AND RECOMMENDATION
PAGE -5

01  (AR 16.)   Indeed, even Dr. Gentile found the diagnosis "questionable". (AR 267.)

02  Furthermore, plaintiff fails to meet her burden of showing the harmfulness in any error in the

03  ALJ's omission of PTSD as a step two diagnosis, or to suggest any specific resulting

04  limitations.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list impairment as

05  severe at step two harmless where limitations considered at step four).

06       Plaintiff also argues the ALJ failed to call a testifying medical expert at hearing to assess

07  the treatment records, but fails to make a showing of the necessity for such an expert in this

08  case.   The Court finds the ALJ's omission of PTSD as a step two severe impairment supported

09  by substantial evidence.

10  B.   Substance Abuse

11       Plaintiff takes issue with the ALJ's step two finding of a severe impairment of substance

12  abuse, and argues her substance abuse should not have been considered in the analysis of her

13  credibility.   Plaintiff further argues the ALJ did not properly conduct the Drug Abuse and

14  Alcoholism (DAA) analysis.   However, plaintiff's argument seems to be based on a

15  misapprehension of the DAA analysis in the context of the sequential evaluation of disability.

16       A claimant is not entitled to disability benefits "if alcoholism or drug addiction would .

17  . . be a contributing factor material to the Commissioner's determination that the individual is

18  disabled."  42 U.S.C. § 423(d)(2)(C).   Therefore, where relevant, an ALJ must conduct a

19  DAA analysis and determine whether a claimant's disabling limitations remain absent the use

20  of drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935.   That is, the ALJ must first identify

21  disability under the five-step procedure and then conduct a DAA analysis to determine whether

22  substance abuse was material to disability.   *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th

01 Cir. 2001).  "If the remaining limitations would still be disabling, then the claimant's drug

02 addiction or alcoholism is not a contributing factor material to his disability.   If the remaining

03 limitations would not be disabling, then the claimant's substance abuse is material and benefits

04 must be denied."  *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).   As with each of the

05 first four steps of the disability evaluation process, the claimant bears the burden of showing

06 that his or her DAA is not a contributing factor material to his or her disability.  *Id.*; *Ball v.*

07 *Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

08      Here, after proceeding through the sequential evaluation, the ALJ did not find plaintiff

09 disabled.   Therefore, there was no need to conduct the DAA analysis.

10      Furthermore, aside from the materiality of the plaintiff's drug addiction or alcoholism, a

11 lack of truthfulness about substance use is a proper consideration in the evaluation of plaintiff's

12 credibility.   *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). *See also Sample v.*

13 *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is

14 entitled to draw inferences logically flowing from the evidence.") (cited sources omitted).

15 Here, the ALJ found inconsistent plaintiff's reports to her providers regarding the nature and

16 extent of her substance abuse:

17      During the March 2006 DSHS evaluation, the claimant told Dr. Carstens that
        she had been in substance abuse treatment "years ago" and that she had been
18      clean and sober for four years" [AR 209], a report that is inconsistent with
        subsequent records that note the claimant's long history of cocaine use [AR
19      237].   When the claimant was seen at Harborview's emergency room in
        December 2006, a toxicology screen was positive for cocaine [AR 249], and
20      during a primary care visit in January 2007, the claimant declined to provide a
        urine sample [AR 226-27.]   In March 2007, the claimant reported to a nurse
21      practitioner at Pioneer Square Clinic that she had been clean and sober for one
        month [AR 224], and during the July 2008 consultative evaluation, the claimant
22      told Dr. Widlan that she had been clean and sober from cocaine for one year [AR

REPORT AND RECOMMENDATION
PAGE -7

01  269-70]; however, at the hearing, it was established that the claimant last used in
    August 2009.   The claimant has clearly continued to use drugs, and her
02  inconsistent reports render her allegations regarding her mental health
    symptoms less credible, especially in light of observations such as those made at
03  Harborview in August 2007 that her mood symptoms were likely the result of
    her cocaine use [AR 237.]

04

05  (AR 21.)   The Court does not find error in the ALJ's consideration of plaintiff's substance

06  abuse in the evaluation of her credibility.

07                                         Medical Opinions

08          Plaintiff argues the ALJ erred in the evaluation of certain medical opinion evidence.

09  Plaintiff contends the reasons given by the ALJ were not specific and legitimate because the

10  ALJ relied only on those opinions that supported a denial of benefits and rejected those that

11  supported plaintiff's claims.   (Dkt. 20 at 4.)     However, plaintiff misapprehends the

12  requirements of a legally sufficient analysis of the medical evidence.

13          An ALJ's reliance on the portions of medical evidence that support a denial of benefits

14  and rejection of the opinions that do not is not error, so long as the ALJ's conclusion is

15  supported by substantial evidence and the reasons given are legally sufficient.   "The ALJ is

16  responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533

17  F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.

18  2003)).   *Accord Thomas*, 278 F.3d at 956-57 ("When there is conflicting medical evidence, the

19  Secretary must determine credibility and resolve the conflict.") (quoting *Matney v. Sullivan*,

20  981 F.2d 1016, 1019 (9th Cir. 1992)).   The ALJ may reject physicians' opinions "by setting

21  out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

22  interpretation thereof, and making findings."   *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

REPORT AND RECOMMENDATION
PAGE -8

01 1998) (citing *Magallanes*, 881 F.2d at 751).   Rather than merely stating his conclusions, the

02 ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are

03 correct."   *Id.*   (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

04      The ALJ need not discuss each piece of evidence in the record.   *Vincent v. Heckler*, 739

05 F.2d 1393, 1394-95 (9th Cir. 1984).   Instead, the ALJ "must explain why 'significant probative

06 evidence has been rejected.'" *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

07 A.      State Agency Consultants

08      Plaintiff argues the ALJ failed to explain the weight accorded the Psychiatric Review

09 Technique form completed by Dr. Gary Nelson. (AR 280-93.)   However, as acknowledged by

10 plaintiff, the ALJ discussed and adopted the Mental Residual Functional Capacity Assessment

11 (MRFCA) form completed by Dr. Nelson.  (AR 276-79.)   Plaintiff does not articulate any

12 way in which this omission was relevant to the resolution of this case, or point to any particular

13 opinions of Dr. Nelson that should have been given weight by the ALJ.   Claims that are

14 unsupported by explanation or authority may be deemed waived.   *See generally Carmickle*,

15 533 F.3d at 1161 n.2 (declining to address issues not argued with any specificity) (citing

16 *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (the court

17 "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in

18 an appellant's opening brief")).

19      Plaintiff also argues the ALJ failed to mention the assessment by Mary Gentile, Ph.D.

20 However, as discussed above, the ALJ declined to adopt as insufficiently supported the opinion

21 of any of the state agency evaluators on the PTSD diagnosis.  (AR 16.)   On its face, Dr.

22 Gentile's report is one of the state agency evaluation reports suffering from this deficiency.

REPORT AND RECOMMENDATION
PAGE -9

01   *See, e.g., Magallanes,* 881 F.2d at 755 (a reviewing court may draw "specific and legitimate"

02   inferences from the ALJ's opinion).   Plaintiff does not suggest any other specific opinion of

03   Dr. Gentile that should have been discussed.

04   B.    David Widlan, Ph.D.

05         Plaintiff argues the ALJ failed to explain the weight given to Dr. Widlan's assignment

06   of a Global Assessment of Functioning (GAF) score of 40.   (AR 272.)   While the ALJ did not

07   specifically mention this score, he declined to give weight to that part of Dr. Widlan's assessed

08   limitations based on plaintiff's subjective reports, which the ALJ found not credible.   (AR 22.)

09   An ALJ may reject a treating physician's opinion if it is based "'to a large extent'" on a

10   claimant's self-reports that have been properly discounted as incredible.   *Morgan v. Comm'r*

11   *Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605

12   (9th Cir. 1989)).   While plaintiff argues the GAF score is not based on her subjective reports,

13   Dr. Widlan's report indicates otherwise, stating it was based on a clinical interview of plaintiff,

14   as well as emergency service notes from Harborview Medical Center. (AR 269.)   Indeed, the

15   Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV-TR),

16   specifically provides that the GAF assessment is made based on either the individual's

17   symptoms or her functional impairments, whichever is lower.   DSM-IV-TR at 32-33.   "A

18   GAF score is a rough estimate of an individual's psychological, social, and occupational

19   functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,* 159 F.3d

20   1161, 1164 n.2 (9th Cir.1998).   The Commissioner has determined the GAF scale "does not

21   have a direct correlation to the severity requirements in [the Social Security Administration's]

22   mental disorders listings."   65 Fed. Reg. 50,746, 50,765-766 (Aug. 21, 2000).   The Court, for

REPORT AND RECOMMENDATION
PAGE -10

01   all of these reasons, finds no error in relation to the GAF score from Dr. Widlan.

02   C.     Luci Carstens, Ph.D.

03          Dr. Carstens evaluated plaintiff on March 1, 2006 for Washington State DSHS. (AR

04   209-15.)   The ALJ did not find persuasive Dr. Carstens' opinion regarding moderate

05   limitations in plaintiff's ability to learn new tasks, to exercise judgment and make decisions,

06   and to perform routine tasks, finding such cognitive limitations unsupported by Dr. Carstens'

07   exam findings of "some mild difficulties" with focused attention and concentration.   (AR 22.)

08   Similarly, the ALJ did not give significant weight to the social limitations assessed by Dr.

09   Carsten consisting of moderate limitations in her ability to interact appropriately in public

10   contacts, and marked limitations in her ability to relate appropriately to co-workers and

11   supervisors and to respond appropriately to and tolerate the pressures and expectations of a

12   normal work setting.   The ALJ found this portion of Dr. Carstens' opinion undermined by a

13   reliance on plaintiff's unreliable subjective reports, a finding which plaintiff does not challenge.

14   The ALJ gave very little weight to the GAF score of 45 assessed by Dr. Carstens, finding it

15   inconsistent with mental status exam findings and based in large part not on plaintiff's mental

16   health condition, but on outside psychosocial stressors, such as unemployment, finances, and

17   transitional housing.

18          The Court finds unavailing plaintiff's argument that the ALJ's evaluation of Dr.

19   Carstens' opinions lacks the support of substantial evidence.   Plaintiff argues the ALJ ignored

20   the results of "soci-emotional functioning" tests, and disputes the ALJ's rejection of Dr.

21   Carstens' assessment as based on plaintiff's subjective reports.   However, the ALJ reasonably

22   noted that Dr. Carstens used direct quotes from plaintiff in support of the assessed limitations.

REPORT AND RECOMMENDATION
PAGE -11

01  (AR 22.)   (*See*, *e.g.*, AR 211 ("Ms. Lyde stated that she tends to be 'on edge' emotionally and

02  has a difficult time maintaining her composure when she is around people."))   As stated above,

03  an ALJ may reject a physician's opinion based to a large extent on a claimant's self-reports

04  properly discounted as incredible.   *Morgan*, 169 F.3d at 602.   Further, the ALJ did not ignore

05  testing conducted by Dr. Carstens; he found it inconsistent with the rest of the doctor's findings.

06  The rejection of a physician's opinion due to discrepancy or contradiction between the opinion

07  and the physician's own notes or observations is "a permissible determination within the ALJ's

08  province."   *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).[2]

09  D.      Robert E. Parker, Ph.D.

10          Dr. Parker conducted an evaluation of plaintiff for DSHS on August 21, 2006. (AR

11  216-23.)   He assessed major depression, recurrent severe without psychosis, PTSD, and

12  history of cocaine dependence, with a number of functional limitations.   (*Id.*)   He felt plaintiff

13  might need monitoring "for episodic alcohol use/abuse".   (AR 218.)

14          Plaintiff contends the ALJ's consideration of Dr. Parker's opinions lacks the support of

15  substantial evidence.   However, the Court finds no fault with the ALJ's reasoning.   The ALJ

16  noted that Dr. Parker assessed no cognitive limitations other than moderate limitations in

17  plaintiff's ability to perform routine tasks, and found a lack of explanation for this limitation in

18  the doctor's report coupled with "essentially unremarkable mental status examination

19  findings".   (AR 22.)   Plaintiff argues the ALJ disregarded Dr. Parker's "clinical assessment

20  and objective findings" (Dkt. 20 at 11), but his report contains no indication of any

21  ───────────────────

22          2 Plaintiff's final argument that the ALJ was required to provide citations to the record
supporting "the remaining reasons" for rejecting Dr. Carstens' opinion is insufficiently specific to
permit consideration. *Carmickle* , 533 F.3d at 1161 n.2.

01    abnormalities in that regard.  Similarly, the ALJ declined to give probative weight to Dr.

02    Parker's assessment of moderate limitations in plaintiff's ability to interact appropriately in

03    public contacts, to control physical or motor movements and maintain appropriate behavior,

04    marked limitations (AR 216 ("very significant interference with basic work-related activities"))

05    in her ability to relate appropriately to co-workers and supervisors, and severe limitations (*id.*

06    ("inability to perform one or more basic work-related activities")) in her ability to respond

07    appropriately to and tolerate the pressures and expectations of a normal work setting.   An ALJ

08    may properly reject an opinion that is conclusory and inconsistent with the record.  *See*

09    *generally Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999); *Young v. Heckler*, 803 F.2d

10    963, 968 (9th Cir. 1986).

11         Plaintiff also disputes the ALJ's evaluation of Dr. Parker's opinions as negatively

12    impacted by a failure to adequately consider the effects of her substance abuse, arguing Dr.

13    Parker found no such ongoing or chronic problem in this regard.   The ALJ, however, found

14    otherwise, noting the contradiction between plaintiff's assertion in March 2006 that she had

15    been "clean and sober for four years" (AR 209) and medical records to the contrary (*see*, *e.g.*,

16    AR 224, 230-52, 237 ("46 y.o. female with a long history of cocaine dependence going back for

17    many years and documented in the medical records")).   The Court finds legally sufficient

18    reasons provided for the ALJ's evaluation of Dr. Parker's opinions.

19    E.    Amelia Hodges, Lic. SW

20         Plaintiff assigns error to the lack of weight given by the ALJ to the MRFCA form

21    completed by her treating mental health counselor, Amelia Hodges, Lic.SW.   (AR 325.)

22    Plaintiff argues the ALJ failed to articulate "any clear and convincing reasons" for rejecting this

REPORT AND RECOMMENDATION
PAGE -13

01   opinion, as well as those of her other examining and treating providers. (Dkt. 20 at 14.)

02   However, the standard for evaluating the legal sufficiency of the ALJ's consideration of

03   the contradicted opinions of a treating or examining physician is "'specific and legitimate

04   reasons' supported by substantial evidence in the record". *Lester v. Chater*, 81 F.3d 821,

05   830-31 (9th Cir. 1996).   Furthermore, in considering the opinion of a social worker such as Ms.

06   Hodges, the ALJ may assign less weight to this non-"acceptable medical source", so long as the

07   ALJ generally explains the weight given to the opinion and provides germane reasons for doing

08   so.   *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).   *See also Turner v. Comm'r of Soc.

09   *Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (lay testimony from other sources may be

10   expressly disregarded if the ALJ gives germane reasons for doing so).

11   The Court finds the ALJ provided germane reasons for the lack of weight given to Ms.

12   Hodges' assessment.   Although the ALJ noted the signature on the document was illegible, he

13   recognized the person was a social worker.[3]   The ALJ found "inherently less persuasive" the

14   social worker's opinion that "nearly everything would increase the claimant's level of

15   impairment", noting the check-box form was unsupported by any mental status examination

16   findings or other records.   (AR 23.)   *Molina v. Astrue*, 674 F.3d 1103, 1111 (9th Cir. 2012)

17   (ALJ may "'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of

18   the bases of their conclusions.'") (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996);

19   also citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give

_____

20   [3] Plaintiff argues the ALJ violated his duty to fully and fairly develop the record by not
conducting an inquiry to determine who completed the form.   *Smolen*, 80 F.3d at 1288 (citing *Brown v.*
21   *Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).   An ALJ has an obligation to recontact a treating physician
when the evidence received is inadequate for a determination of disability.   20 C.F.R. §§ 404.1512(e),
22   416.912(e); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006).   The Court does not
find facts or circumstances here that would give rise to such a duty.

REPORT AND RECOMMENDATION
PAGE -14

01   more weight to opinions that are explained than to those that are not.")) Plaintiff, therefore,

02   does not establish error in the ALJ's consideration of the MRFCA evaluation by Ms. Hodges.

Step Four

04   Plaintiff argues the ALJ erred at step four by relying on an inaccurate RFC assessment,

05   and by failing to properly develop vocational expert testimony regarding his past relevant work.

06   A.   RFC

07   At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

08   assess her work-related abilities on a function-by-function basis, including a narrative

09   discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p. RFC is the most a claimant can

10   do considering his or her limitations or restrictions. *See* SSR 96-8p.

11   Here the ALJ made the following assessment of plaintiff's RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple, routine tasks that require no more than occasional contact with the general public.

15   (AR 18.)

16   Although plaintiff contends the RFC was inadequate, this argument is a corollary to

17   plaintiff's assertion that the ALJ improperly weighed the medical opinion testimony. As the

18   Court has concluded the ALJ did not err in assessing the medical evidence, this argument fails.

19   The ALJ is not required to include limitations for which there is no substantial evidence

20   support. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001); *see also Batson v.*

21   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding the ALJ need not

22   include in the RFC assessment properly discounted opinion evidence or claimant testimony).

REPORT AND RECOMMENDATION
PAGE -15

01   The RFC included all of the limitations found by the ALJ to be supported by substantial

02   evidence.

03   B.   Past Relevant Work

04          Plaintiff bears the burden at step four of demonstrating she can no longer perform her

05   past relevant work.   20 C.F.R. §§ 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20,

06   25 (2003).   Nevertheless, the ALJ retains a duty to make factual findings to support his

07   conclusion, including a determination of whether a claimant can perform the actual demands

08   and job duties of her past relevant work or the functional demands and job duties of the

09   occupation as generally performed in the national economy.   *Pinto v. Massanari*, 249 F.3d

10   840, 844-45 (9th Cir. 2001) (citing SSR 82-61).   "This requires specific findings as to the

11   claimant's residual functional capacity, the physical and mental demands of the past relevant

12   work, and the relation of the residual functional capacity to the past work."   *Id.* (citing SSR

13   82-62).

14          One purpose of the Dictionary of Occupational Titles (DOT) is to classify job titles by

15   their exertional and skill requirements.   *Johnson v. Shalala,* 60 F3d 1428, 1434, n.6 (9th Cir.

16   1995).   The DOT raises a rebuttable presumption as to job classification, and is the best source

17   for how a job is generally performed.   *Id.,* at 1435-46; *Pinto*, 249 F.3d at 845-46.

18          Plaintiff's past relevant work was as a fish packer. (AR 23, 36-37.)   The vocational

19   expert (VE) testified this corresponds to DOT No. 920.687-086, classified as heavy, unskilled

20   work. (AR 36-37.)   The ALJ found plaintiff's residual physical and mental functional capacity

21   consistent with the physical and mental demands of this work.   (AR 23-24.)

22          Plaintiff first argues the ALJ erred in neglecting to ask the VE if the description of his

REPORT AND RECOMMENDATION
PAGE -16

01     past relevant work was consistent with the DOT.  Pursuant to SSR 00-4p, an ALJ has an

02     affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT

03     and, if there is a conflict, determine whether the VE's explanation for such a conflict is

04     reasonable.  *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).  As stated by the

05     Ninth Circuit:   "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only

06     insofar as the record contains persuasive evidence to support the deviation."  *Johnson*, 60 F.3d

07     at 1435-36 (VE testified specifically about the characteristics of local jobs and found their

08     characteristics to be sedentary, despite DOT classification as light work).

09        Plaintiff accurately observes the ALJ's failure to affirmatively ask the VE whether his

10     testimony was consistent with the DOT.  However, in this case, the error can be deemed

11     harmless because plaintiff does not allege any actual conflict with the DOT.  *See Rushing v.*

12     *Astrue*, 360 Fed. Appx. 781, 783, 2009 WL 5033730 (9th Cir. 2009) (failure to ask VE

13     regarding consistency with the DOT harmless where plaintiff did not allege the VE's testimony

14     was actually inconsistent with the DOT) (citing *Massachi*, 486 F.3d at 1153-54 [n. 19] ("This

15     procedural error could have been harmless, were there no conflict, or if the vocational expert

16     had provided sufficient support for her conclusion so as to justify any potential conflicts, as in

17     *Johnson*. Instead, we have an apparent conflict with no basis for the vocational expert's

18     deviation."))

19        Next, plaintiff contends the ALJ failed to make inquiry or findings about the mental

20     demands of plaintiff's past relevant work, and failed to ask the VE for an opinion regarding

21

22

REPORT AND RECOMMENDATION
PAGE -17

01   plaintiff's ability to do that work.[4]  While the ALJ did not make specific findings regarding

02   plaintiff's past relevant work as actually performed, an ALJ need not render "explicit findings

03   at step four regarding a claimant's past relevant work both as generally performed and as

04   actually performed."  *Pinto*, 249 F.3d at 844-45 (emphasis supplied).  Plaintiff argues her past

05   relevant work "as generally performed" is inconsistent with the RFC assessed by the ALJ

06   limiting her to "simple routine" tasks and with the DOT description for the job.  The Court

07   finds this argument unavailing.  "Fish Packer", DOT 920.687.086, does specify a Reasoning

08   Level of 2, defined, *inter alia*, as requiring an ability "to carry out detailed but uninvolved

09   written or oral instructions".  DOT, App. C.  However, a limitation to simple, routine tasks

10   has been found consistent with the DOT description of a job requirement of level two

11   reasoning. *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984-85 (C.D. Cal. 2005).  Plaintiff does

12   not succeed in establishing error in the ALJ's step four finding.

13                                              **CONCLUSION**

14          For the reasons set forth above, the decision of the Commissioner should be

15   AFFIRMED.

16          DATED this 14th day of September, 2012.

17

18                                                      Mary Alice Theiler
                                                        United States Magistrate Judge

19   ────────────────────

20          4 Plaintiff also argues in her Reply Brief that the ALJ failed to reconcile the VE's testimony
     about the seasonal nature of her past relevant work (AR 37) and the DOT.  However, arguments not
21   raised in an appellant's opening brief are deemed waived.  *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d
     1169, 1177 n.8 (9th Cir. 2009) (citing *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)).  Further,
     the Commissioner correctly notes that seasonal work may qualify as past relevant work. *See, e.g.*,
22   *Byington v. Chater,* 76 F.3d 246 (9th Cir. 1996) (finding past relevant work as a school bus driver to be
     substantial gainful activity).

REPORT AND RECOMMENDATION
PAGE -18